**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**SEBASTIAN PATTERSON,**

      **Petitioner,**

**v.**                                                                                  **Civil Action No. 1:18cv199**
                                                                                         **(Judge Kleeh)**

**FREDERICK ENTZEL,**

      **Respondent.**

<u>**REPORT AND RECOMMENDATION**</u>

**I. <u>Background</u>**

On October 23, 2018, the *pro se* Petitioner, an inmate then-incarcerated at FCI Hazelton,[1] filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the calculation of his federal sentence in relation to a sentence imposed by the state of Illinois. ECF No. 1. Pursuant to a deficiency notice, on November 2, 2018, Petitioner paid the five-dollar filing fee. ECF No. 5.  On February 2, 2019, this Court made a preliminary review of the petition and determined that summary dismissal was not warranted; accordingly, an Order to Show Cause was issued against Respondent. ECF No. 7. After being granted an extension of time, on April 1, 2019, Respondent filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 11. On April 3, 2018, the court issued a <u>Roseboro</u> Notice; and after being granted an extension of time, on May 31, 2019, Petitioner filed a reply. ECF No. 18.

**II. <u>Facts</u>**

On July 13, 2009, in the Circuit Court of Winnebago County in Rockford, Illinois, Petitioner was sentenced in Case No. 2007-CF-4004 to a 10-year term of imprisonment for

---

[1] Petitioner is presently incarcerated at FCI Pekin, in Pekin, Illinois. <u>See</u> ECF No. 19.

Possession with Intent to Deliver Heroin. See Declaration of Bryan Erickson, Bureau of Prisons ("BOP") Correctional Programs Specialist ("Erickson Decl."), ECF No. 11-2, ¶ 3 at 1. On June 4, 2013, Petitioner was released on parole supervision. Id.; see also Judgment – Illinois Department of Corrections ("IDOC"), ECF No. 11-3 at 2 and Copy of June 27, 2018 Jan Stopps email – Parole Credit re: Sebastian Patterson, ECF No. 11-3 at 4. On January 17, 2015, while still on parole, Petitioner was arrested by the Rockford Police Department in Rockford, Illinois, in Case Nos. 2015-CF-134 and 2015-TR-1555 on new charges of Armed Violence; Armed Habitual Criminal; Unlawful Possession of Weapons by a Felon; Possession of Controlled Substance; Possession of Cannabis; and Improper Turn Signal. Erickson Decl., ¶ 4 at 1 – 2; see also Winnebago County 17th Judicial Circuit Court Charge Summary, ECF No. 11-3 at 10.

Petitioner's federal Pre-Sentence Report ("PSR") shows on January 20, 2015, the IDOC filed a parole violation report, charging Petitioner with violating the conditions of his parole in Circuit Court of Winnebago County Case No. 2007-CF-4004. On the same date, Petitioner signed the violation report, waiving his preliminary hearing, and the IDOC placed a detainer on Petitioner. See Erickson Decl., ECF No. 11-2, ¶ 5 at 2.

On June 15, 2015, a Grand Jury in the United States District Court for the Northern District of Illinois (hereinafter "Northern District of Illinois") filed a single count Indictment in Case No. 3:15cr50021-1, charging Petitioner with being Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). On the same date, the district court issued an arrest warrant for Petitioner. Erickson Decl., ECF No. 11-2, ¶ 6 at 2; see also Indictment, Northern District of Illinois Indictment, ECF No. 11-3 at 12.

On June 23, 2015, pursuant to a federal writ of habeas corpus *ad prosequendum* issued by the Northern District of Illinois to the state of Illinois, Petitioner was "borrowed" to appear in

federal court for his initial hearing and arraignment proceedings in Case No. 3:15cr50021-1. Erickson Decl., ECF No. 11-2, ¶ 7 at 2; see also United States Marshals Service ("USMS") USM-129 Individual Custody/Detention Report, ECF No. 11-3 at 15.

On July 20, 2015, the Circuit Court of Winnebago County dismissed its charges in Case Nos. 2015-CF-134 and 2015-TR-1555 in lieu of the federal prosecution on the related charge. However, Petitioner remained in primary state custody, pursuant to the parole revocation detainer in Circuit Court of Winnebago County Case No. 2007-CF-4004. Erickson Decl., ECF No. 11-2, ¶ 8 at 2; see also Winnebago County 17th Judicial Circuit Court Charge Summary, ECF No. 11-3 at 10.

On December 9, 2015, the State of Illinois Prisoner Review Board ordered the Petitioner's parole revoked in docket number 2007-CF-4004, committing him to the IDOC. Erickson Decl., ECF No. 11-2, ¶ 9 at 2; see also State of Illinois Prisoner Review Board Order, ECF No. 11-3 at 18.

Petitioner pled guilty to violating 18 U.S.C. § 922(g)(1) in Northern District of Illinois Case No. 3:15CR50021-1, and on August 29, 2016, he was sentenced in to a 120-month term of imprisonment, to be followed by three years of supervised release. Erickson Decl., ECF No. 11-2, ¶ 10 at 2 - 3; see also Judgment in a Criminal Case, ECF No. 11-3 at 20. On September 1, 2016, Petitioner was returned to Illinois state authorities, and the federal judgment was placed as a detainer. Erickson Decl., ECF No. 11-2, ¶ 11 at 3; see also United States Marshals Service ("USMS") USM-129 Individual Custody/Detention Report, ECF No. 11-3 at 15.

Records that the BOP received from the IDOC Records Center indicate that Petitioner completed his state parole revocation sentence on October 5, 2016. Erickson Decl., ECF No. 11-2, ¶ 12 at 3.  The IDOC also informed the BOP that Petitioner's state sentence was credited with

all time he spent on parole beginning on June 4, 2013, until he was arrested on January 17, 2015, as well as all time spent in custody from January 17, 2015, through September 2, 2016,[2] the date he was committed to IDOC as a parole violator. Id. On October 21, 2016, the state of Illinois released Petitioner to the USMS to begin service of his federal sentence. Id.; see also Copy of June 27, 2018 Jan Stopps email – Parole Credit re: Sebastian Patterson, ECF No. 11-3 at 4 and USMS USM-129 Individual Custody/Detention Report, ECF No. 11-3 at 15.

The BOP prepared a sentence computation for Petitioner based on the 120-month term of imprisonment commencing on October 5, 2016, the date Petitioner completed his Illinois state parole revocation sentence and was discharged from IDOC to commence the service of his consecutive federal sentence. Erickson Decl., ECF No. 11-2, ¶ 13 at 3.  No prior custody credit was applied to the federal sentence, because all time spent on parole since June 4, 2013, and all time spent in custody from January 17, 2015 through October 5, 2016, was spent serving his 10-year Illinois state sentence imposed on July 13, 2009. Id. Respondent asserts that Petitioner's projected release date via Good Conduct Time is June 21, 2025 [sic].[3] Id.; see also Public Information Inmate Data, ECF No. 11-3 at 28.

### III. Contentions of the Parties

#### A. The Petition

---

[2] The United States Marshals Service Individual Custody/Detention Report for Petitioner shows he was returned to the IDOC on September 1, 2016, following his federal sentencing. See USMS USM-129 Individual Custody/Detention Report, ECF No. 11-3 at 15.  The State suggests in its correspondence that Petitioner returned to them on September 2, 2016, but regardless, all time Petitioner was on federal writ was credited toward his state sentence. See Copy of June 27, 2018 Jan Stopps email – Parole Credit re: Sebastian Patterson, ECF No. 11-3 at 4.

[3] The undersigned notes that since Respondent prepared this response, Petitioner's projected date of release, with good conduct time, is now shown as July 17, 2025. See Bureau of Prison's ("BOP") inmate locator, FEDERAL BUREAU OF PRISONS, FIND AN INMATE, https://www.bop.gov/inmateloc/ (last visited Dec. 18, 2019).

Petitioner maintains that the BOP improperly calculated his federal sentence, because he was not given credit for the time he spent between January 17, 2015  until August 28, 2016 in Illinois state custody, and that on August 29, 2016, the day his federal sentence was imposed, that time spent in state custody had not yet been credited against any other sentence. ECF No. 1 at 2, 5. He contends that he was arrested by the state of Illinois on January 17, 2015 on the same charges that were the basis for the federal charges; already had a "federal detainer lodged on him upon his arrest;" was taken into federal custody on a writ, sentenced to 120 months (in Case No. 3:15cr50021-1 in the United States District Court for the Northern District of Illinois), and "on October 5, 2016, . . . was paroled to federal authorities." ECF No. 1-1 at 1. He argues that the BOP's contention that he received credit on his Circuit Court of Winnebago County, Illinois  Case No. 07CF4004 from June 4, 2013 through September 2, 2016 is incorrect, because it ignores the date that the credit was imposed, which was *after* his federal sentence was imposed. He contends that 18 U.S.C. § 3585(b) requires that credit must be applied for time spent in official detention *upon* the imposition of the federal sentence, if it has not already been credited to another sentence. Id. at 2.

Petitioner contends he has exhausted his administrative remedies regarding this claim. See ECF No. 1-1 at 1; see also id. at 4 – 5.

As relief, Petitioner requests that this court direct the BOP to credit his sentence with the time between January 17, 2015 through August 28, 2016. ECF No. 1 at 8.

**B. Motion to Dismiss/Summary Judgment**

Respondent maintains that Petitioner's federal sentence commenced on October 5, 2016, the day state authorities relinquished primary custody and released Petitioner to exclusive federal custody. Further, all the time Petitioner spent on parole and in custody up until October 5, 2016

5

has already been credited toward Petitioner's state sentence, thus, he is precluded from receiving any prior custody credit toward his federal sentence, and therefore, the petition should be dismissed or summary judgment granted to Respondent. ECF No. 11-1 at 1 – 2.

Respondent concedes that Petitioner has exhausted his administrative remedies regarding the claims in the petition. Id. at 5.

## C. **Petitioner's Reply**

In his reply, Petitioner argues that Respondent's contention that all his time spent on parole and in custody up until October 5, 2016 has already been credited to his state sentence is "not completely accurate," and therefore, he is not precluded from receiving credit toward his federal sentence. ECF No. 18 at 1. He argues that because Winnebago County dismissed its charges against him in lieu of the federal charges, the BOP failed its duty to properly apply § 3585(b) to his prior custody credit. Therefore, he contends that the BOP should have treated his administrative grievances as a request for *nunc pro tunc* designation of the time he spent in state custody as part of his federal sentence. Id. at 3.

## IV. **Standard of Review**

### A. **Motion to Dismiss 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff

can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Petitioner is proceeding *pro se* and therefore, the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 – 21 (1972) (*per curiam*); Erickson v. Pardus, 551 U.S. 89, 94 (2007). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Haines, *supra* at 520–21. "[T]he mandated liberal construction afforded to *pro se* pleadings 'means that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.'" Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999). However, "judges are [] not required to construct a party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417 – 8 (7th Cir. 1993).

Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that "because the plaintiffs [] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound

7

to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

"Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alternative Energy. Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (cited with approval in Witthohn v. Federal Ins. Co., 164 Fed. Appx. 395 (4th Cir. 2006) (unpublished)). There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint. "Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S.Ct. 2499, 2509 (2007).

### B. <u>Motion for Summary Judgment</u>

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

In <u>Celotex</u>, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact." <u>Celotex</u>, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict." <u>Anderson</u>, *supra* at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." <u>Id.</u> The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. <u>Id.</u> at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, *supra* at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, *supra* at 587. "Where the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. *citing* First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289 (1968). See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). Although any permissible inferences to be drawn from the  underlying facts must be viewed in the light most favorable to the party opposing the motion, where, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, *supra* at 587-88; Anderson, *supra* at 248 - 49.

## V. <u>Analysis</u>

### A. <u>Prior Custody Credit</u>

Review of this petition must start with the basic premise that a federal sentence commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a).   BOP policy further provides, "[i]f the prisoner is serving no other federal sentence at the time the sentence is imposed, and is in <u>exclusive</u> federal custody (not under the jurisdiction of a federal writ of habeas corpus *ad prosequendum*) at the time of sentencing on

the bases of the conviction for which the sentence is imposed, the sentence commences on the date of imposition, even if a state sentence is running along concurrently." BOP Program Statement 5880.28, Sentence Computation Manual (CCCA of 1984), p. 1-12 (hereinafter "BOP PS 5880.28").[4] In addition, a defendant must be given credit 'for any time [s]he has spent in official detention prior to the date the sentence commences . . . that has not been credited against another sentence.' 18 U.S.C. 3585(b)" King v. DeBoo, 2012 WL 1119763, *2 (N.D. W.Va. Apr. 3, 2012) (Bailey).

However, in some cases, a federal sentence may begin prior to the Attorney General gaining physical custody of the defendant. Where, as here, when a prisoner faces both state and federal charges, the term "received in custody" is particularly important. In such instances, the concept of primary jurisdiction applies. Primary jurisdiction is explained in United States v. Smith:

> In the context of successive criminal prosecutions by different sovereignties this "chief rule which preserves our two systems of courts from actual conflict of jurisdiction" means that the sovereignty which first arrests the individual acquires the right to prior exclusive jurisdiction over him, . . . and this plenary jurisdiction is not exhausted until there has been complete compliance with the terms of, and service of any sentence imposed by, the judgment of conviction entered against the individual by the courts of that first sovereignty . . .

United States v. Smith, 812 F.Supp. 368, 371 (E.D.N.Y. 1993) (quoting In re Liberatore, 574 F.2d 78 (2nd Cir. 1978)); see also Newsome v. Williams, No. 3:15cv141, 2016 WL 11431790, *3 (N.D. W.Va. May 26, 2016) ("[W]hen an inmate is facing sentences imposed by both federal and state authorities, the sovereign that first arrested the inmate retains primary custody over him until that sovereign's imposed sentence is satisfied.").

---

[4] This policy is available in its entirety at < https://www.bop.gov/policy/progstat/5880_028.pdf >

Primary jurisdiction remains vested in a sovereign until that sovereign relinquishes its primary jurisdiction through dismissal of the charges, bail release, parole release, or satisfaction of the sentence. See Coles v. DeBoo, No. 2:10cv70, 2010 WL 3767113 (N.D. W.Va. September 27, 2010; Chambers v. Holland, 920 F.Supp. 618, 622 (M.D. Pa. 1998) *aff'd*, 100 F.3d 946 (3rd Cir. 1996) *citing* United States v. Warren, 610 F.2d 680, 684 - 85 (9th Cir. l980)("Primary jurisdiction remains vested in the state which first arrested the defendant until that jurisdiction relinquishes its priority by, e.g., bail release, dismissal of the state charges, parole release, or expiration of the sentence."). The mere fact that a state prisoner is in federal court pursuant to a federal writ of *habeas corpus ad prosequendum* does not mean that the prisoner's federal sentence has commenced. "Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation." United States v. Evans, 159 F.3d 908, 912 (4th Cir. 1998). See also Thomas v. Whalen, 962 F.2d 358, 361 n.3 (4th Cir. 1992)("A prisoner is not even in custody for purposes of section 3568[5] when he appears in federal court pursuant to a writ *ad prosequendum;* he is merely 'on loan' to federal authorities."); see also Newsome, 2016 WL 11431790 at *3 (*citing* United States v. Evans, 159 F.3d at 912.

The BOP, on behalf of the Attorney General, is responsible for calculating federal terms of imprisonment. See United States v. Wilson, 503 U.S. 329 (1992). The BOP must follow 18 U.S.C. § 3585(b) when calculating sentences:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences

---

[5] In computation of any federal sentence, two separate decisions must be made: when the federal sentence commences and to what extent the defendant can receive credit for time spent in custody prior to commencement of sentence. For offenses committed prior to November 1, 1987, each of these decisions is governed by repealed 18 U.S.C. § 3568, which specifies that the Attorney General is responsible for sentence computation decisions. For offenses committed on or after November 1, 1987, commencement of federal sentence is governed by 18 U.S.C. § 3585(a), and prior custody credit is governed by 18 U.S.C. § 3585(b).

(1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; *that has not been credited against another sentence*.

(emphasis added).

In Wilson, the Supreme Court held that under 18 U.S.C. § 3585(b), "Congress made clear that a defendant could not receive double credit for his detention time." Wilson, 503 U.S. 329 at 337. Thus, prior custody credit cannot be awarded to a prisoner if the prisoner has already received credit towards another sentence. See United States v. Brown, 977 F.2d 574, 1992 WL 237275, at *1 (4th Cir. Sept. 25, 1992) (Defendant may receive credit against his federal sentence for time spent in official detention prior to the date his  sentence commences unless it has been credited against another sentence); United States v. Goulden, 54 F.3d 774, 1995 WL 298086 (4th Cir. May 17, 1995) (credit is only available for time spent in custody which has not been credited against another sentence).

Petitioner's claim is that he is entitled to "jail credit" for all of the time between January 17, 2015, when he was arrested by Illinois state authorities, through August 29, 2016, the date his federal sentence was imposed (a period 590 days). In advancing this argument, Petitioner maintains that this period of time was not applied to his state sentence and did not otherwise benefit him with respect to his state sentence. The undersigned acknowledges that the sentence calculation in this case is confusing, and it is understandable that Petitioner believes he is entitled to prior custody credit towards his federal sentence. However, a careful review of the exhibits, including records from the IDOC, establishes that Petitioner is not entitled to any prior custody credit, and his sentence as calculated by the BOP is correct.

When Petitioner was arrested on January 17, 2015[6] by the Illinois authorities, he was still on parole from his conviction in the Circuit Court of Winnebago County Case No. 2007-CF-4004. Illinois state authorities thus had primary jurisdiction over him.[7] Erickson Decl., ECF No. 11-2, ¶ 4 at 1 - 2; see also Winnebago County 17th Judicial Circuit Court Charge Summary, ECF No. 11-3 at 10. Petitioner remained in Illinois state custody on the pending charges in Winnebago County Circuit Court for Armed Violence; Armed Habitual Criminal; Unlawful Possession of Weapons by a Felon; Possession of Controlled Substance; Possession of Cannabis; and Improper Turn Signal in Case Nos. 2015-CF-134 and 2015-TR- 1555. See id.

On June 23, 2015, Petitioner came into temporary federal custody pursuant to a federal writ of habeas corpus *ad prosequendum,* for an initial hearing and arraignment proceedings in United States District Court for the Northern District of Illinois in Case No. 3:15cr50021-1. See Erickson Decl., ECF No. 11-2, ¶ 7 at 2; see also USMS USM-129 Individual Custody/Detention Report, ECF No. 11-3 at 15.

Once the federal prosecution had been initiated, on July 20, 2015, the Illinois authorities dismissed their charges against Petitioner in Circuit Court of Winnebago County Case Nos. 2015-

---

[6] Petitioner is incorrect in stating that he "had a federal detainer lodge on him upon his arrest on January 17," 2015. See ECF No. 1-1 at 1. Petitioner had two detainers. The first was a state detainer, placed on him was placed on him three days *after* his arrest, on January 20, 2015, when, after the IDOC filed a parole violation report, it placed a detainer on Petitioner for violating the conditions of his parole in Circuit Court of Winnebago County Case No. 2007-CF-4004. See Erickson Decl., ECF No. 11-2, ¶ 5 at 2. The second detainer, a federal detainer, came later.

[7] In Illinois, prisoners not serving a term of life imprisonment eventually become eligible for parole, or "Mandatory Supervised Release" ("MSR"). See (730 ILCS 5/3-3-3(c) (West 2006)). When eligible for MSR, they are presented with an agreement that sets forth the conditions of their release from the physical custody of the Department of Corrections (730 ILCS 5/3-3-7 (West 2006)). People v. Wilson, 228 Ill. 2d 35, 48, 885 N.E.2d 1033, 319 Ill. Dec. 353 (2008). They must sign this agreement and retain a copy in order to secure their release from the physical custody of the Department of Corrections. 730 ILCS 5/3-3-7(c) (West 2006); Wilson, 228 Ill. 2d at 48; see also In re Detention of Powell, 217 Ill. 2d 123, 128, 839 N.E.2d 1008, 298 Ill. Dec. 361 (2005) (prisoner who refused to sign his MSR agreement was kept in physical custody). Therefore, Illinois parolees remain in the legal custody of the Department of Corrections for the duration of their MSR. 730 ILCS 5/3-14-2(a) (West 2006).

CF-134 and 2015-TR-1555. See Erickson Decl., ECF No. 11-2, ¶ 8 at 2; see also Winnebago County 17th Judicial Circuit Court Charge Summary, ECF No. 11-3 at 10. Nonetheless, Petitioner was still in primary state custody, pursuant to the state parole revocation detainer in Circuit Court of Winnebago County Case No. 2007-CF-4004. See Erickson Decl., ECF No. 11-2, ¶ 8 at 2. On December 9, 2015, the State of Illinois Prisoner Review Board ordered Petitioner's parole revoked, committing him to the IDOC to serve his parole revocation sentence. See id., ¶ 9; see also State of Illinois Prisoner Review Board Order, ECF No. 11-3 at 18.

Accordingly, after his August 29, 2016 federal sentencing in the Northern District of Illinois Case No. 3:15cr50021-1, on September 1, 2016, because Petitioner was still in the primary custody of Illinois, he was properly returned to Illinois state authorities, to finish serving his state parole revocation sentence, and his federal judgment was then placed as a detainer.[8] Erickson Decl., ECF No. 11-2, ¶ 11 at 3; see also USMS USM-129 Individual Custody/Detention Report, ECF No. 11-3 at 15. Petitioner completed his state parole revocation sentence on October 5, 2016 and thereafter, was released to federal authorities to commence his federal sentence.[9] Erickson Decl., ECF No. 11-2, ¶ 12 at 3; see also Copy of June 27, 2018 Jan Stopps email – Parole Credit re: Sebastian Patterson, ECF No. 11-3 at 4  and USMS USM-129 Individual Custody/Detention Report, ECF No. 11-3 at 15.

Accordingly, the state of Illinois retained its primary jurisdiction over Petitioner when it lent him to federal authorities pursuant to the federal writ. See Newsome, 2016 WL 11431790, at *4 (finding the State of Georgia did not lose primary jurisdiction over the petitioner when it lent him to federal authorities pursuant to a writ of habeas corpus *ad prosequendum*). Moreover, Illinois

---

[8] This is the second detainer, and the only federal detainer that Petitioner had.

[9] The USMS did not physically transfer Petitioner on October 21, 2016, although his federal sentence had commenced on October 5, 2016.

continued to retain primary jurisdiction over Petitioner from his January 17, 2015 arrest until October 5, 2016, when he was finally released from serving his parole revocation sentence from Circuit Court of Winnebago County Case No. 2007-CF- 4004, and taken into federal custody, to begin service of his federal sentence. See Erickson Decl., ECF No. 11-2, ¶ 16 at 4 -5; see also Copy of June 27, 2018 Jan Stopps email – Parole Credit re: Sebastian Patterson, ECF No. 11-3 at 4 and USMS USM-129 Individual Custody/Detention Report, ECF No. 11-3 at 15.

Accordingly, despite Petitioner's contention that the BOP wrongfully computed his federal sentence and that his federal sentence should commence on August 29, 2016, the date it was imposed [see ECF No. 1-1 at 2 – 3], Petitioner misapprehends the situation. Because his state charges were dismissed, his federal sentence is deemed to have commenced on October 5, 2016, the date the state of Illinois relinquished its primary custody of him after he completed his parole revocation sentence in Circuit Court of Winnebago County Case No. 2007-CF-4004, when, pursuant to the federal detainer, Illinois released him into the exclusive custody of federal authorities. See Newsome, 2016 WL 11431790, at *3. IDOC records confirm that all the time Petitioner spent in the primary custody of the state of Illinois, including the time spent on parole from June 4, 2013 through January 17, 2015, when he violated parole and was arrested, as well as all of the time he spent in custody after his arrest, from January 17, 2015 through October 5, 2016, was spent serving his 10-year Illinois state sentence imposed on July 13, 2009, has already been credited against his state sentence. See Copy of June 27, 2018 Jan Stopps email – Parole Credit re: Sebastian Patterson, ECF No. 11-3 at 4 and USMS USM-129 Individual Custody/Detention Report, ECF No. 11-3 at 15.

Because of the general rule that a defendant may not receive double credit for his detention time, Petitioner is not automatically entitled to any additional credit as to his federal sentence.

Accordingly, because all of the time Petitioner spent in the primary custody of the state of Illinois from January 17, 2015 until he completed his state parole revocation sentence on October 5, 2016, when his federal sentence then commenced, has already been credited towards his state sentence, he has already received all the prior custody credit he is entitled to receive.  As for Petitioner's insistence that 18 U.S.C. § 3585(b) "clearly establishes that the credit is applied, if on the date the federal sentence *was imposed*, the time was not credited somewhere else [ECF No. 1-1 at 2 (emphasis added)], Petitioner misconstrues the statute, which says in pertinent part:

> **18 U.S. Code § 3585. Calculation of a term of imprisonment**
>
> (b) Credit for Prior Custody.—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention ***prior to the date the sentence commences***—
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

18 U.S.C. § 3585 (emphasis added).  Accordingly, it is not the date that the federal sentence is *imposed*, but rather, the date that the federal sentence *commences.* Petitioner's federal sentence, imposed on August 29, 2016, did not *commence* until October 5, 2016. By then, all time served in state custody had already been credited to his 10-year sentence in Circuit Court of Winnebago County Case No. 2007-CF-4004.

Moreover, because Petitioner is not entitled to any credit against his federal sentence for time spent in state custody, his claim for *nunc pro tunc* designation of the same must be denied.

17

## VI. <u>Recommendation</u>

Based on the foregoing, the undersigned recommends that Respondent's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [ECF No. 11] be **GRANTED**, and Petitioner's §2241 petition be **DENIED and DISMISSED with prejudice**.

The parties are notified that this Report and Recommendation is hereby **FILED**, and a copy will be submitted to United States District Judge Thomas S. Kleeh.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rules 6(d) and 72(b), Federal Rules of Civil Procedure, and Rules 1(b) and 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2254 of Title 28, United States Code, **any party shall have fourteen days from the date of service of this Report and Recommendation within which to file with the Clerk of this Court**, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.**  Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12. Extension of this time period may be granted by the presiding District Judge for good cause shown.

**Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).  A copy of such objections shall be served on Judge Kleeh.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket sheet, and to transmit a copy electronically to all counsel of record.

This Report and Recommendation completes the referral from the district court.  The Clerk is directed to terminate the Magistrate Judge's association with this case.

DATED: December 27, 2019

/s/ *Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE